ISIDORE DREYFUS, TRUSTEE, *v.* S. K. BARTON..

[54 South. 254.]

1. BANKRUPTCY. *Life insurance. Exemptions. Proceeds. Code* 1906, § 2141.

Under Code 1906, § 2141, providing that "the proceeds of a life insurance policy, not exceeding three thousand dollars, payable to the executor, or administrator, or the insured, shall inure to the heirs or legatees, freed from all liability for the debts of the decedent, except premiums paid on the policy by any one, other than the insured, and debts due for expenses of last illness and for burial, etc., the proceds of a policy, having only a cash surrender value, or after it matured by reason of the death of the insured, is never in any way liable for the debts of the insured.

2. BANKRUPT LAWS. *Exemptions.*

The federal bankrupt law makes no attempt to interfere with the exemption laws of any state, and both by the statute and decisions of this state, a liberal interpretation has always been given to exemption laws.

3. SAME.

The insured has the right to assert the exemption, allowed under Code 1906, § 2141, at any time before he actually allows the value of the policy to be paid to his creditors, although he has listed it with the bankrupt estate as an asset and his legal representatives or heirs have the same right.

4. SAME.

Section 70a of the bankrupt law vesting the trustee with the title to the estate of the bankrupt has no application to exempt property, that being especially excepted.

5. SECTION 70A, BANKRUPT LAW. *Exemptions. Life insurance policies.*

That part of section 70a of the bankrupt law which provides "that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate or personal representative, he may within thirty days after the cash surrender value has been ascertained and surrendered to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and continue to hold, own and carry such policy, free from the claims of the creditors, etc., has no application to insurance policies which are exempt under any statute of the state.

APPEAL from the chancery court of the First district of Hinds county.

HON. G. G. LYELL, Chancellor.

Petition by Isidore Dreyfus, trustee, in bankruptcy against Carroll Barton, administrator of the estate of S. K. Barton, deceased. Decree for defendant, complainant appeals and defendant takes cross appeal.

The record shows the facts as follows:

S. K. Barton filed a petition in bankruptcy on November 28, 1908, having at that time an insurance policy on his life, payable to his estate, in the sum of three thousand dollars, on which he had borrowed the full loan value. The cash surrender value at that time was forty-two dollars. On December 1st, before a trustee had been appointed and before a meeting of his creditors, Barton committed suicide. He left no will. On the 9th day of December Carroll Barton, appellee, was appointed administrator of the estate of said decedent, and the

amount of the insurance policy, less the loan, etc., was paid to the administrator. The administrator paid the expenses of last illness and funeral and made proper report to the chancery court, and was ordered to distribute the remainder among the heirs of S. K. Barton, consisting of appellee and his two sisters.

Thereafter appellant, who had in the meantime been appointed trustee in bankruptcy of S. K. Barton, filed his petition in the chancery court, asking that the order of distribution be set aside, claiming that the proceeds of the insurance policy should go to the creditors in bankruptcy of the deceased. When S. K. Barton filed his schedules in bankruptcy, listing his assets, among which this policy appears, and claiming his exemptions, he did not claim the proceeds of the policy in question among his exemptions. It is contended by the appellant that the proceeds of the life insurance company, upon the death of the decedent, should be applied to the payment of his creditors. Since, under the law, the bankrupt had the privilege of paying to the trustee the cash surrender value of the insurance policy and retaining it in full force, it is contended that, inasmuch as such cash surrender value is the property of the creditors and collectible by the trustee, therefore, upon the death of the bankrupt, the proceeds of the policy likewise inured to the benefit of the creditors, and that, the title of the policy being at the time of the death of the bankrupt in the trustee, the proceeds of the policy immediately vested in the trustee, and could not be divested in favor of his heirs; he having at the time neither wife, nor children, nor others dependent upon him for support.

The chancellor held that the trustee was entitled to forty-two dollars, the cash surrender value of the policy, and that the rest of the proceeds were exempt and not liable for the debts of the decedent, and were properly payable to the administrator for the benefit of the heirs at law.

*Green & Green,* for appellant.

Section 70 of the act provides: "The trustee of the estate of a bankrupt, upon his appointment and qualification shall be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as said property is exempt," etc.

After some contrariety of opinion upon the subject, the supreme court of the United states has definitely settled the true construction here, and held that the provisions of this section are not exclusive but cumulative, and that in addition to the rights given under the exemption statutes of the state, the additional right provided by this section is given to the bankrupt, whereunder, "When any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to be paid to the trustee the sum so ascertained and stated, and continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution, otherwise the policy shall pass to the trustee as assets.

Barton died between the adjudication and the first meeting of his creditors by suicide, the policy had, or would have had, had he not committed suicide, the said value of forty-two dollars, but by reason of his death the total amount thereunder was paid, and the contest is over who is entitled to it, the creditors or his brother and sisters.

It is axiomatic that the trustee but stands in the shoes of the bankrupt; that upon his appointment he is vested with the title to all the property is, we submit, beyond the peradventure of a doubt, and that among the assets so passing was the policy of insurance herein litigated. *In re Hottling,* 175 Fed. 65; *In re Whipley,* 169 Fed. 1019; *In re White,* 174 Fed. 334; *In re Moore,*

173 Fed. 681; 1 Remington on Bankruptcy, §§ 1002, 1005; *In re Shugluff,* 106 Fed. 154; *In re Willing,* 113 Fed. 193; *In re State,* 98 Fed. 78; *Clark* v. *Society,* 143 Fed. 175; *In re Coleman,* 136 Fed. 818; *Fuller* v. *New York et al.,* 67 N. E. 879.

But it will doubtless be argued here, as it was in the court below, that there was no right in the trustee at all to these policies, but that the award to the appellant of even that which would have been the cash surrender value, was erroneous. But such contention can find no support in the authorities, which we submit are all in our favor. *In re Shugluff,* 106 Fed. 154; *Waldron* v. *Becker et al.,* 68 N. Y. Sup. 402; *In re Willing,* 113 Fed. 193.

Section 70a declares that there shall be thus vested in the trustee "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under the judicial proceedings against him." Then follows the proviso which we have considered. It is clear that this proviso merely defines a certain class of insurance which may be excepted and exempted, by the action of the bankrupt and upon the conditions stated, from the general property which by the law is vested in the trustee. In other words, the proviso is in the nature of a privilege to the debtor to retain such specified insurance upon yielding to the trustee the cash surrender value of the policy at the time of adjudication. All other property of the bankrupt, including all insurance owned by him, which does not fall within the provisions of the proviso, passes to the trustee.

2 May Ins., § 459d; *Porter* v. *Porter,* 2 Willson, Civ. Cas. Ct. App., § 434; *Cameron* v. *Fay,* 55 Tex. 58; *Levy* v. *Van Hagen,* 69 Ala. 17; *Tompkins* v. *Levy,* 87 Ala. 263, 6 South. 346, 13 Am. St. Rep. 31; *Boyden* v. *Insurance Co.,* 153 Mass. 544, 27 N. E. 669; *Tennes* v. *Ins. Co.,* 26 Minn. 271, 3 N. W. 346; *Talcott* v. *Field,* 34 Neb.

611, 52 N. W. 400, 33 Am. St. Rep. 662; *Evers* v. *Assn.*, 59 Mo. 429, 98 Fed. 78; *Clark* v. *Society*, 143 Fed. 175; *Coleman*, 136 Fed. 818; *Fuller* v. *Fire Ins. Co.*, 67 N. E. 879; *Hettling*, 175 Fed. 65; *Whelpley*, 169 Fed. 1019; *White*, 174 Fed. 334; *Moore*, 173 Fed. 681; *McKenzie*, 132 Fed. 986.

*Easterling & Manship*, for appellee.

Appellee in this case bases his contention upon section 2141 of the Code of 1906, exempting the proceeds of an insurance policy payable to the executor or administrator from the debts of the insured and upon the statutes of the bankruptcy act of 1898, recognizing the exemptions of the state in which the bankrupt lives, stating that the act shall not affect the exemptions allowed by the state in which the bankrupt has his residence and upon the further provision of the act allowing the bankrupt to pay the cash surrender value of a life insurance policy and to continue to own the policy for the purpose of recovering the ultimate proceeds.

Section 2141 of the Mississippi Code of 1906, is as follows:

Under Chapter 48, Titled Exempt Property: "The proceeds of a life insurance policy, not exceeding three thousand dollars (changed to five thousand by the act of 1908) payable to the executor or administrator of the insured, shall inure to the heirs or legatees, freed from all liabilities for the debts of the decedent."

Section 5 of the bankruptcy act 1898 is as follows:

Sec. 5. "This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months, or the greater portion thereof immediately preceding the filing of the petition."

Section 70 of the act is as follows: "Title to property. (a) The trustee of the estate of a bankrupt, upon

his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their qualification and appointment, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) . . . (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him; provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own and carry the policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets.''

There has been a great many conflicting opinions among the district and circuit courts of the United States as to the operation of section 70a, some contending that it was only by availing himself of the operation of the proviso and paying the cash surrender value of the policy that the bankrupt could retain the policy whether the state laws exempted the proceeds or not. It has been finally decided, however, by the supreme court of the United States that the section is in the nature of an additional right given the bankrupt and that it was not a limitation on the exemption laws of those states where there was no exemption laws as to the proceeds of a policy, the bankrupt would not loose his policy but could pay to the trustee the cash value and continue to hold it free from the claims of his creditors. It has been finally decided that wherever an insurance policy is exempt under the laws of the state of the

bankrupt, it is exempt under the bankruptcy laws and free from the claims of the creditors. *Holden* v. *Stratton,* 198 U. S. Reports 202.

The first proposition that we wish to urge is that the proceeds of an insurance policy by virtue of section 2141 of our Code is exempt from the creditors of the insured, not only after death, but during the life of the insured and that the cash surrender value is not subject during the lifetime of the insured to execution and levy. If the proceeds of a policy under our law is exempt from execution and levy then the proceeds are exempt under the bankruptcy law and nothing vested in the trustee on the date of adjudication and he received no title whatever to the policy.

It is the policy of the courts to liberally construe exemption statutes if the legislative intent is evident to give the statute such a construction as to effect that intent.

The construction put upon our statute by this court is the exclusive guide to the bankrupt court as to whether or not the policy is exempt during the life of insured and if exempt from creditors by the state law it is exempt by the bankruptcy law. *In re White,* 109 Fed. 635; *In re Richardson* v. *Woodard,* 104 Fed. 873; *In re McKinney,* 15 Fed. 535; *Holden* v. *Stratton,* 198 U. S. 202, 104 Fed. 968; *Steele* v. *Buel.*

Our statute plainly exempts the proceeds of an insurance policy from the debts of the insured and we contend that the proceeds are exempt during life as well as after the death of the insured and is not subject to execution and levy during the life of the insured. For this reason we respectfully urge that the policy was exempt at the date of adjudication and no title whatever vested in the trustee to the cash surrender value or any value whatever, and that the chancellor erred in awarding the cash surrender value to the trustee for the benefit of the creditors of deceased.

As to the title remaining in the bankrupt until the appointment and qualification of the trustee, see Remington on Bankruptcy, vol. 1, page 640. *Rand* v. *Railway Co.*, 186 N. Y. 58; *Boonville* v. *Blakely*, 107 Fed. 891.

Appellant bases his contention upon section 70a of the bankrupt act, which says: "The trustee of the estate of a bankrupt, upon his appointment and qualification, shall be vested by operation of law with the title of bankrupt, as of the date of adjudication, except in so far as it is property which is exempt," to all, etc. Appellant contends that regardless of all exemption statutes and though the trustee had not been appointed the lines "the trustee shall be vested with the title of the bankrupt" gives to the creditors irrevocably the proceeds of insured's policy. We urge, however, that the trustee could only get title to the cash surrender value of the policy. He could only get title to that which is not exempt. He takes the title to the policy charged with the exemption in favor of the heirs or legatees in case of death. Remington, vol. 1, page 672.

"The trustee succeeds to the bankrupt title and stands in his shoes and takes the property in the same plight and condition that the bankrupt held it and subject to all equities and rights imposed upon it in the hands of the bankrupt."

*In re New York Ecnom. Printing Co.*, 110 Fed. 514, the court says:

"The bankruptcy act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues." *Wilson* v. *McClelland*, 2 Story, 494 Fed. Cas., No. 17887; *In re Nicholas*, 122 Fed. 299; Remington, vol. 1, page 676.

Exemption statutes are liberally construed by the court to effect the purpose of the exemption and insurance exemptions are most highly favored by the courts.

The language of our statute is clear exempting the proceeds of a policy to the heirs of a decedent from the claims of creditors and has been before this court in several cases and referred to as a "timely and wise provision." *Coats* v. *Worthy,* 72 Miss. 575, 18 So. Rep. 916; *Cozine* v. *Grimes,* 76 Miss. 294, 24 So. 197; *Bordoski* v. *Feld,* 40 So. 816; *Steele* v. *Buel,* 104 Fed. 968; *Pilman* v. *Stein,* 134 Fed. 235; *In re Groves,* 6 Abr. 728; *Duffy,* 118 Fed. 629; *Hoskin,* 6th A. B. R. 485; *Holden* v. *Stratton,* 198 U. S. 202; *Stevenson* v. *King,* 93 Fed. 789.

*Holden* v. *Stratton,* 198 U. S. 202, is authority on the case at bar settling the question as to exemptions in bankruptcy in reference to insurance policies.

Certainly then appellant's contention is a fallacy which admits that the state laws exempt the money and that the bankruptcy law recognizes that exemption but still contends that the creditors are entitled to this exempted money by virtue of a section of the act which says "that the trustee shall be vested with the title to property which is not exempted." *In re Shingluff,* 106 Fed. 154; *Gould* v. *New York Life Ins. Co.,* 132 Fed. 927; *Warnock* v. *Davis,* 104 U. S. 775; *Cammack* v. *Lewis,* 15 Wall. 643; *Buelow,* 98 Fed. 86; *Josephon,* 121 Fed. 142.

Appellant attempts to draw some distinction between the wife and children of an insured and the other heirs. The section of our Code denies the proceeds of the policy to the creditors whether the heirs be sisters, brothers, mother, wife, or children and indeed the creditors are denied the money absolutely and the proceeds could go to the strangers that are the legatees. It is immaterial that the claimants here are sisters and the brother of the defendant; the point is that they are heirs. *Coates* v. *Worthy,* 72 Miss. 575.

For these reasons, etc., we respectfully submit that the decree of the chancellor should be affirmed, except in that judgment should be entered here in favor of the admin-

istrator for the cash surrender value of forty-two dollars.

Argued orally by *Luther Manship, Jr.*, for appellee.

MAYES, C. J., delivered the opinion of the court.

By section 2141, Code of 1906, it is provided that: "The proceeds of a life insurance policy not exceeding three thousand dollars, payable to the executor, or administrator of the insured, shall inure to the heirs or legatees, freed from all liability for the debts of the decedent, except premiums paid on the policy by any one other than the insured and debts due for expenses of last illness and for burial," etc. The policy in controversy in this case is for three thousand dollars. The policy was made payable to the executor or administrator in the very language of the above statute, and while it was a current policy, having only a cash surrender value, or after it matured by reason of the death of the insured, it was never in any way liable for the debts of S. K. Barton. The object of this statute is to secure to the insured a policy, not to exceed three thousand dollars, from liability to any creditor for any debt. This statute exempts the whole proceeds, or any part of it, whether the value accrues during the life or after the death of the insured. The cash surrender value of the policy is just as much "proceeds" of the policy, within the meaning of the statute, as would be the full amount after the death of the insured. In other words, when the person insured dies, the proceeds of the policy are exempt; while he lives, if the policy acquires a cash surrender value, this cash surrender value is "proceeds" within the meaning of the statute, and exempt so long as the value in either case does not exceed three thousand dollars. Any other construction of the statute would impair, if it did not destroy in some cases, the object of the statute.

As an illustration, suppose a person should insure his life under a contract of insurance maturing in twenty years, and suppose such person should become bankrupt at the end, of nineteen years and six months, when the cash surrender value should almost equal the face of. the policy; if the, statute would not protect such policy, and the cash surrender value should become liable to creditors, the statute would be. practically nullified as to that policy, and the insured might be unable to get another. The usual purpose of persons in insuring is not to build up estates for creditors. The usual creditor does not rely upon a policy of insurance as the basis for extending credit. Of course, it is true that in some instances insurance policies play a part in commercial transactions and form the basis for some credit; but this is the exception. The law recognizes this, and also recognizes the fact that in the main the insurance policy is procured for the benefit of dependents, and undertakes to secure it to them, rather than to creditors. Persons insure, frequently, for the very purpose of building up an estate which cannot be taken for the purpose of paying their debts, and frequently these policies of insurance furnish the only protection to the family of the insured against poverty and want.

The federal bankrupt law makes no attempt to interfere with the exemption laws of any state, and both by the statutes and decisions of this state a liberal interpretation has always been given to exemption laws. See *Bank* v. *O'Neal,* 86 Miss. 45, at page 52, 38 South. 630. This has been the uniform holding of this and all courts upon this subject. The insured had the right to assert the exemption at any time before he actually allowed the value of it to be paid to his creditors, and although he listed it with the bankrupt estate as an asset, and died before asserting the exemption allowed by section 2141 of the Code of 1906, his legal representative had the same right to assert the exemption and effectuate the

purposes of the statute as the insured himself could do, to say nothing of the right of the heirs.

Section 70a of the bankrupt law expressly provides that: "The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt," etc.    Act July 1, 1898, c. 541, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451). The trustee in bankruptcy gets no such title to the exempt property of the bankrupt as to make it indefeasible by the bankrupt, or his legal representative, until such exempt property has been actually allowed to be distributed to the creditors.    That part of section 70a which provides "that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and surrendered to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy, free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings," was held in the case of *Holden* v. *Stratton,* 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018, to have no application to insurance policies which were exempt under any statute of a state.    In the above case the court held that the cash surrender value of an exempt policy was not liable to be taken by the creditors.

In the case of *Holden* v. *Stratton, supra,* the court says: "As section 70a deals only with property which, not being exempt, passes to the trustee, the mission of the proviso was, in the interest of the perpetuation of policies of life insurance, to provide a rule by which,

where such policies passed to the trustee because they
were not exempt, if they had a surrender value their
future operation could be preserved by vesting the bank-
rupt with the privilege of paying such surrender value,
whereby the policy would be withdrawn out of the cate-
gory of an asset of the estate. That is to say, the pur-
pose of the proviso was to confer a benefit upon the
insured bankrupt by limiting the character of the inter-
est in a non-exempt life insurance policy which should
pass to the trustee, and not to cause such a policy when
exempt to become an asset of the estate. When the
purpose of the proviso is thus ascertained, it becomes
apparent that to maintain the construction which the
argument seeks to affix to the proviso would cause it to
produce a result diametrically opposed to its spirit and
to the purpose it was intended to subserve. And the
meaning which we deduce from the text and context of
the proviso is greatly fortified by obvious considerations
of public policy. It has always been the policy of con-
gress, both in general legislation and in bankrupt acts,
to recognize and give effect to the state exemption laws.
This was cogently pointed out by Circuit Judge Cald-
well, in delivering the opinion in *Steele* v. *Buel,* 104 Fed.
972, 44 C. C. A. 287, where he said: 'From the organiza-
tion of the federal courts under the judiciary act of
1789, the law has been that creditors suing in these courts
could not subject to execution property of their debtor
exempt to him by the law of the state. Judiciary Act
of 1789 (1 Stat. 93, c. 21); *Wayman* v. *Southard,* 10
Wheat. 1, 32, 6 L. Ed. 253, 260; *Lamaster* v. *Keeler,*
123 U. S. 376, 8 Sup. Ct. 197, 31 L. Ed. 238; *Dartmouth
Sav. Bank* v. *Bates* (D. C.), 44 Fed. 546 . . . . The
same rule has obtained under the bankrupt acts, which
have sometimes increased the exemptions, notably so
under Act March 2, 1867, ch. 176, 14 Stat. 517 (section
5045, Rev. St.), but have never lessened or diminished
them,' etc."

It is our judgment that the case should be affirmed on the direct appeal of the appellants and reversed on the cross-appeal of appellee, and judgment entered here awarding to appellees and cross-appellants, as to this feature of the case, the forty-two dollars cash surrender value of the policy awarded to appellants by judgment of the lower court, all costs to be taxed on appellants.

*Reversed and judgment here as above.*

Anderson, J. (dissenting).

I dissent from the majority opinion. It is there held that ''the above statute (section 2141, Code of 1906) is to secure to the insured a policy, not to exceed three thousand dollars, from liability to any creditor for any debt. This statute exempts the whole proceeds, or any part of it, whether the value accrues during the life or after the death of the insured.'' My judgment is there is nothing whatever in the statute indicating a purpose to exempt to the insured, during his life, the proceeds of the policy. On the other hand, its object (plainly expressed, as it appears to me) is to exempt such proceeds alone to the heirs and legatees of the decedent, as against his debts. During the lifetime of the insured the value of this policy was liable to his debts, and therefore by operation of the bankrupt law the title vested in the trustee in bankruptcy for the benefit of his creditors, and, the title having so vested, the proceeds after his death belonged to the trustee. In other words, the insured did not own the policy at his death, and his heirs now have no interest in it.