## KING *v.* MILES.

[67 South. 182.]

1. BANKRUPTCY. *Property vesting in trustee. Insurance policies. Exemptions. Waiver of exemptions. Estoppel. Testimony as witness. Assignments. Rights of assignee. Judgment. Concluding. Matter concluded.*

Under Bankrupt. Act (Act July 1, 1898), 30 Stat. 565, chap. 541 (U. S. Comp. St. 1913, sec. 9654), sec. 70a, providing that, when any bankrupt shall have any insurance policy, which has a cash surrender value payable to himself, his estate, or personal representative, he may pay or secure to the trustee, such surrender value and continue to hold the policy free from the claim of creditors, and that otherwise the policy shall pass to the trustee as assets, a trustee can claim only the cash surrender value, though the entire proceeds of the policy become available before adjudication, and the trustee has no right whatever to a policy in which there is no cash surrender value.

2. BANKRUPTCY. *Right of trustee. Insurance policy.*

Where insurance policies on the life of a bankrupt had been assigned as security for an indebtedness greater than their cash

surrender value and were also exempt under Laws 1908, chapter 175, there was no property therein whatever to be received and disposed of by the trustee, and in such case the chancery court has no power to make a decree adjudicating the title as between the trustee and the assignee of the policies.

3. BANKRUPTCY. *Exemptions. Waiver of exemptions.*
A bankrupt does not waive his exemptions in insurance policies by listing them in his schedule of property and reciting that they were held by a creditor by assignment for a debt, and without claiming them as exempt or making any claim whatever in regard to them, or any statement that they were property belonging to the estate.

4. ESTOPPEL. *Testimony as witness. Assignment. Rights of assignee.*
In a suit by the administratrix of the holder of insurance policies against an assignee thereof, to recover the amount of the policies on the theory that they were assigned as collateral security for an indebtedness which had been paid, no estoppel could be predicated on the fact that insured testified, in a prior action between his trustee in bankruptcy and the assignee, to recover premiums paid to the assignee by insured while insolvent, in which suit the title to the policies was not in issue.

5. JUDGMENTS. *Conclusiveness. Res adjudicata.*
A plea of *res adjudicata* will not be sustained where there is not an identity of parties complainant and their quality in bringing suit in the first case and the second one, and where the identity of the cause of action is not the same, and the identical matter in issue in the second case was not determined by the first adjudication.

APPEAL from the chancery court of Yazoo county.
HON. P. Z. JONES, Chancellor.

Bill by Miss Letitia King administratrix of Charlie L. King, deceased, against Mrs. Mary N. Miles and others. From a decree for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*E. L. Brown, Williams & George,* and *Mayes & Mayes,* for appellant.

*Noel, Boothe & Pepper,* for appellees.

Reed, J., delivered the opinion of the court.

This is an appeal from the decree of the chancellor sustaining the plea of *res adjudicata*, and dismissing appellant's bill of complaint.

Appellant, Miss Letitia King, administratrix of the estate of Charles L. King, deceased, filed her bill in chancery against the appellee, Mrs. Mary R. Miles, then a resident of the state of Louisiana, and certain other parties who were indebted to Mrs. Miles, and who were made parties in order to subject the amounts that they severally owed to the payment and satisfaction of such decree as might be rendered in favor of appellant against Mrs. Miles.

Appellant, as administratrix, sought to recover from Mrs. Mary R. Miles the amount of ten thousand dollars and interest, being the proceeds of two insurance policies of five thousand dollars each in the New York Life Insurance Company on the life of Charles L. King, who died October 11, 1911.

Photographs of the two policies are with the record in this case, are now before us. Both policies originally were made payable to the executors, administrators, or assigns of the insured. Later there was a change in the beneficiary, so that the policies were made payable to Miss Letitia King, sister of the insured. Subsequent to this a change was made again in the beneficiary, whereby the policy was made payable, as at first, to the executors, administrators, and assigns. The policies were then assigned and transferred to Mrs. Mary R. Miles by the insured.

Appellant averred in her bill that, though the assignments to Mrs. Miles are absolute in terms, they were nevertheless made for the purpose of securing to her certain indebtedness owing by Charles L. King, the insured, for advances; that the policies were, by understanding between Mrs. Miles and Mr. King held as a continuing security for like advances made by her to

him during subsequent years; that Mrs. Miles never acquired any right, title, or interest in the policies, other than that of security for such advances; and that she continued to hold them only as such security.

It appears from the averments in the bill that the entire indebtedness secured by the policies of insurance was paid to Mrs. Miles; that, when she was fully paid, the policies were released from the pledge as security; and that she was then indebted to appellant, as administratrix of the estate of Charles L. King, for the proceeds of the policies, which proceeds she collected by virtue of the assignment to her, and was holding as trustee for the benefit of the estate.

Charles L. King was adjudicated a bankrupt on March 9, 1909. In the schedule of property filed by him, and under the subdivision "policies of insurance," he made the following mention of the two policies of insurance on his life:

"Policies for ten thousand dollars in New York Life payable to sister, Miss M. L. King, but now held by Mrs. M. R. Miles by assignment for debt of three thousand ninety-four dollars and seventy cents, worth about one thousand and eight hundred dollars.

The bankrupt made no other reference to the policies, did not claim them in the schedule as exempt, and they were not set aside to him by the bankrupt court as exempt. It is patent that Mr. King was in error in describing the property in his schedule as payable to his sister. It appears that he only showed in the schedule that the policies were, at the time of their surrender, worth about one thousand, eight hundred dollars, and were assigned as security for an indebtedness of three thousand ninety-four dollars and seventy cents to Mrs. M. R. Miles. He did not make any claim whatever regarding the policies, nor any statement that they were property belonging to his bankrupt estate. It is not apparent, from the terms of the policies,

that they had any cash surrender value, and no custom of the company treating them as having such is alleged or proven. However, we will in this consideration treat them as having a value when listed by the bankrupt.

Appellee Mrs. Miles, in defense to the bill of complaint in the case at bar, claimed that appellant was barred from recovery of the proceeds of the insurance policies in this case, by reason of the adjudication of the court in a former case brought against her by E. L. Trenholm, trustee of the estate of Charles L. King, bankrupt, which cause is numbered 3631 on the general docket of the chancery court of Yazoo county. In that suit the trustee sought to recover: (1) Certain usurious interest paid by the bankrupt to Mrs. Miles; (2) certain overcharges in rent; and (3) certain sums paid by the bankrupt to Mrs. Miles for premiums paid by her on the two insurance policies. It was charged in the bill in that case that the insurance policies had been previously assigned, transferred, and delivered by the bankrupt to Mrs. Miles absolutely and unconditionally, and not as security for advances by her to him; and that the amounts paid by the bankrupt to her to refund the paymants by her of the premiums were so paid by him while he was wholly insolvent and unable to pay his debts, which insolvency was then known to Mrs. Miles, and that such payments were in fraud of the bankrupt's creditors, who might, at the time of the filing of the petition by the bankrupt, had bankruptcy not intervened, have maintained their suits against her to recover the same, and which rights the trustee, under the Bankrupt Act, is subrogated to and invested therewith, for the benefit of the bankrupt's creditors.

In her answer to the bill of complaint in that case (cause 3631), Mrs. Miles denied collecting usurious interest and her liability for any overcharge in rent. She admitted that the policies were transferred and de-

livered to her absolutely and unconditionally by Mr. King, and that she thereafter had the full ownership thereof. She denied that Mr. King was wholly insolvent and unable to pay his debts when he refunded the premiums she had paid, and denied her liability to the trustee for amounts of such premiums.

Evidence was heard in that cause (No. 3631); both Mrs. Miles and Mr. King giving depositions. The following decree was then rendered by the chancellor:

"This cause coming on this day for final hearing on the pleadings, proofs, and all the papers in the cause, and the court, having fully considered the same, is of the opinion that the complainant is entitled to recover on the three demands made by his amended bill and now before the court, viz., usury, demand for overcharges in rent, and premiums paid on insurance policies, together with interest thereon, the sum of six thousand, five hundred dollars, and on no other demand. It is therefore ordered, adjudged, and decreed that the complainant, E. L. Trenholm, trustee of the estate of C. L. King, bankrupt, do have and recover of the defendant Mrs. Mary R. Miles the sum of six thousand five hundred dollars and all costs of court; and it is further ordered, adjudged, and decreed that the said Mrs. Mary R. Miles do have and retain as her absolute property the insurance policies mentioned in said bill of complaint and the proceeds thereof, free from any and all claims thereto made or to be made by said complainant."

In the case at bar much testimony was heard, and extensive accounting between Mrs. Miles and Mr. King, involving large amounts and going over a number of years, was presented. The chancellor decided the case in favor of Mrs. Miles on the defense of *res adjudicata* alone, and he did not pass upon the case in any other respect. This is shown by his decree sustaining the plea and dismissing the bill, which is as follows:

"This cause coming on this day to be heard on the pleadings, proofs, and all the papers in the cause, and the court, being of opinion that the facts in support of the plea of *res adjudicata,* and the plea thereof, are a complete defense to the entire bill of complaint, does not pass upon any other question involved by the pleadings, and proofs, but, deciding the cause on that plea alone, doth order, adjudge, and decree that the bill of complaint of Letitia King, administratrix of the estate of C. L. King, deceased, against the defendant Mary R. Miles *et al,* be and the same hereby is dismissed at the cost of the complainant."

It will be seen that there was no issue in the first case (cause 3631) between the trustee and Mrs. Miles relative to the property in the two policies. The controversy between them, which related to the insurance in any way, was the right of the trustee to recover from Mrs. Miles the amounts paid by the bankrupt, while insolvant, to her for premiums on policies which she claimed to own absolutely and unconditionally. This was the only matter between the parties to that suit touching the insurance policies for the adjudication by the court.

The trustee, by virtue of the surrender in bankruptcy by Charles L. King, could only have received and have been vested with the cash surrender value of the policies. Section 70a of the Bankrupt Act of 1898; *Holden* v. *Stratton,* 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018; *Hiscock* v. *Mertens,* 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771; *Burlingham* v. *Crouse,* 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148; *Everett* v. *Judson,* 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; *Andrews* v. *Partridge,* 228 U. S. 479, 33 Sup. Ct. 570, 57 L. Ed. 929.

In *Burlingham* v. *Crouse, supra,* it was decided that the trustee could not claim as an asset a policy upon the bankrupt's life payable to his executors, adminis-

trators, or assigns, where the insurance company previously advanced to the bankrupt the full surrender value stipulated in the policy. In *Andrews* v. *Partridge, supra,* it was held that the cash surrender value is to be ascertained as of the date of the filing of the petition, and that the right of the bankrupt to pay to the trustee such value, and to continue to hold the policy, is not extinguished by the death of the bankrupt after the filing of the petition, and that such right may be exercised by his executors. In *Everett* v. *Judson, supra,* it was decided that the time when the petition in bankruptcy is filed fixes the cash surrender value of insurance policies on the bankrupt's life; and that the death of the bankrupt between the filing of the petition and the adjudication does not make the proceeds of the policy, over and above the cash surrender value, assets in the hands of the trustees.

It will be seen from the decisions of these cases that the trustee cannot claim any more than the cash surrender value of a policy at the time of the filing of the petition, even though the entire proceeds become available before adjudication; and further that the trustee has no right whatsoever to a policy in which there is no cash surrender value.

It was held in the case of *Dreyfus* v. *Barton,* 98 Miss. 758, 54 So. 254, that the cash surrender value, at the time of adjudication, of a policy on the life of the bankrupt is exempt under the statute (chapter 175, Laws 1908), providing that policies of insurance, payable to the executors or administrators of the insured, shall inure to the heirs or legatees free from all liability for the debts of the decedent, except premiums paid on the policy, etc.; and in the opinion in this case *Holden* v. *Stratton, supra,* was cited and relied on.

In the case at bar the bankrupt mentioned the policies in his schedule, and gave their surrender value, and showed that such policies had been assigned as

security for an amount greater than such value. If this was true, then there was no property therein whatever to be received and disposed of by the trustee. In addition to this, under the holding in *Dreyfus* v. *Barton, supra,* the cash surrender value of the policies was exempt. Therefore it could not have been adjudicated by the court that the trustee had any right or claim to the policies.

It is claimed that the policies were adjudged to belong to Mrs. Miles in the final decree in the cause of *Trenholm, Trustee,* v. *Miles,* No. 3631, by reason of the statement in the decree that she should "have and retain as her absolute property the insurance policies mentioned in said bill of complaint, and the proceeds thereof, free from any and all claims thereto made or to be made by said complainant." We do not see that this statement by the chancellor in his decree can have the effect claimed. It follows, from what we have already said relative to the vesting of an interest in the policies in the trustee, that the trustee had no claim or right to the policies for adjudication, and that therefore the chancery court had no power to make a decree adjudicating the title as between the trustee and Mrs. Miles.

We see nothing in the listing of the policies by the bankrupt in his schedule to constitute a waiver of exemption. We note the argument by counsel for appellee that, as the policy was made payable to Mrs. Miles by the assignment, they were not exempt because the statute relied on is applicable only to policies payable to the executor or administrator of the insured; but Mrs. Miles' absolute ownership of the property is contested in the present case, and is a question for decision, and cannot avail now to sustain counsel's contention.

There is no force in the contention of appellees that there is an estoppel in this case because Mr. King testi-

fied in the first case.   None of his actions in that case
will preclude appellant from maintaining her suit by
proper proof.  ·

There is not an identity of parties complainant and
their quality in bringing suit in the first case and the
present one.   In the first, the complainant was a trus-
tee in bankruptcy suing for the benefit of creditors.
In this case the suit is by another person, who is an
administratrix, for the benefit of an estate of a decedent.

The identity of the cause of action is not the same.
The first case was to recover the amount paid by a bank-
rupt, while insolvent, for premiums.   The present case
is to recover the full proceeds of a policy which accrued
to the rightful beneficiary upon the death of the in-
sured.   There is a difference in identity in the things
sued for.   The first case involved the wrongful pay-
ment of premiums by a bankrupt, as well as illegal
charges of interest and rent.   The second involved the
full amount of insurance paid upon the death of the in-
sured.                                              .

We cannot see that the identical matter in issue in
this case was determined by the former adjudication.
The decree in that former action is not so in point as
to control the issue in the pending one.   We therefore
conclude that the chancellor erred in sustaining the plea
of *res adjudicata*.

Appellees desire us to go into the full consideration
of all of the issues in this case, in addition to that of
*res adjudicata*.   The record shows that there are a
large number of matters for account.   The transactions ·
and dealings between Mrs. Miles and Mr.   King ex-
tend over a number of years.   Errors claimed in the
accounts would have to be carefully examined.   Con-
siderable examination and investigation is necessary.
The lower court is better adapted for all this; it can
make the necessary auditing and stating of accounts by
its master or special commissioner.   The very machin-

ery and organization of the court renders it better suited for the work.

We will not enter into a consideration of any of the other issues of the case; and it is therefore reversed and remanded.

*Reversed and remanded.*