409 So.2d 704 (1982)
Martha Moore BONDS
v.
George Mitchell BONDS and Life & Casualty Insurance Company.
No. 53000.
Supreme Court of Mississippi.
January 27, 1982.
Nora J. Hall, Roy O. Parker & Associates, Tupelo, for appellant.
Finch & Finch, J. Barry Finch, Iuka, Hugh N. Clayton, New Albany, for appellees.
Before PATTERSON, C.J., and BROOM and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Chancery Court of Tishomingo County wherein Martha Moore Bonds, complainant/appellant, caused a writ of garnishment to issue against Life & Casualty Insurance Company, who admitted indebtedness to George Mitchell Bonds, defendant/appellee, in the amount of $10,477.28, being the cash value of three separate insurance policies issued to George Bonds. The writ of garnishment was quashed by the chancellor who opined that the cash values of the policies were exempt under Mississippi Code Annotated section 85-3-11 (1972). Aggrieved of this finding, Martha Bonds appeals and we reverse.
On May 24, 1977, George Mitchell Bonds was held in willful contempt of the Chancery Court of Tishomingo County for nonpayment of child support and alimony. A judgment was rendered against him in the amount of $21,006.84, in favor of Martha Moore Bonds, his former wife, for child support and alimony.
In an effort to satisfy a portion of the judgment, Martha Bonds subsequently caused a writ of garnishment to issue against Life & Casualty Insurance Company of Tennessee. Life & Casualty answered the writ, admitting it was indebted to George Bonds for the cash value of three policies issued to Bonds, being: (1) No. 853594 with a cash value of $3,509.45; (2) No. 878333 with a cash value of $3,737.60; and (3) No. 1164454 with a cash value of $3,230.23.
In an attempt to quash the writ, George Bonds asserted the cash surrender value of the life insurance policies was exempt pursuant to Mississippi Code Annotated section 85-3-11 (1972). Martha Bonds answered the assertion to the right of exemption, stating that Section 85-3-11 was inapplicable due to the fact that appellee had the *705 right to change the beneficiary at any time. In fact, George Bonds had exercised his right to change beneficiaries several times.
The chancellor found Section 85-3-11 controlling, so he granted Bonds' motion to quash the writ and entered a final decree to that effect. Did the chancellor err in quashing the writ of garnishment?
Mississippi Code Annotated section 85-3-11 (1972) provides:
The proceeds of a life insurance policy up to and including the sum of fifty thousand dollars ($50,000.00), including cash surrender and loan values, shall inure to the party or parties named as the beneficiaries thereof, free from all liability for the debts of the person whose life was insured, even though such person paid the premium thereon. In addition to the above exempted amount, all proceeds including cash surrender and loan values, of a policy of life insurance owned by or assigned to another, shall inure to the beneficiary or beneficiaries named therein, subject to terms of any assignment, free from all liability for debts of the person whose life was insured. (emphasis added.)
Appellant contends this statute is inapplicable to the present case due to the fact that appellee reserved the right to change the beneficiary in each policy; therefore, the beneficiary's interest would not vest until the death of the insured.
This question was well settled by this Court in American Life Insurance Company v. Hauer, 218 Miss. 560, 67 So.2d 523 (1953), the Court stating:
It seems to be settled beyond peradventure that the beneficiary in an insurance policy, where the right to change is reserved, has no vested interest therein until the death of the insured. Lamar Life Insurance Company v. Moody, 122 Miss. 99, 84 So. 135; Bank of Belzoni v. Hodges, 132 Miss. 238, 96 So. 97; Faulkner v. Faulkner, 192 Miss. 358, 5 So.2d 421. (218 Miss. at 565, 67 So.2d at 525) (emphasis added.)
This principle of law applied to this case simply means the cash surrender value is still controlled or owned by Bonds until his death and does not answer the question presented here which is, does Section 85-3-11 exempt the cash surrender value from an action to garnish these funds to partially satisfy a decree for child support and alimony?
This precise question has not been dealt with to our knowledge in this state; however, this Court in Dreyfus v. Barton, 98 Miss. 758, 54 So. 254 (1910), interpreted what is now Mississippi Code Annotated section 85-3-13 (1972), not the exemption statute involved here, exempting certain proceeds of life insurance policies made payable to the estate or administrator:
The object of this statute is to secure to the insured a policy, not to exceed three thousand dollars, from liability to any creditor for any debt. This statute exempts the whole proceeds, or any part of it, whether the value accrues during the life or after the death of the insured. The cash surrender value of the policy is just as much "proceeds" of the policy, within the meaning of the statute, as would be the full amount after the death of the insured. In other words, when the person insured dies, the proceeds of the policy are exempt; while he lives, if the policy acquires a cash surrender value, this cash surrender value is "proceeds" within the meaning of the statute, and exempt so long as the value in either case does not exceed three thousand dollars. Any other construction of the statute would impair, if it did not destroy in some cases, the object of the statute.
* * * * * *
The law recognizes this, and also recognizes the fact that in the main the insurance policy is procured for the benefit of dependents, and undertakes to secure it to them, rather than to creditors. Persons insure, frequently, for the very purpose of building up an estate which cannot be taken for the purpose of paying their debts, and frequently these policies of insurance furnish the only protection to the family of the insured against poverty *706 and want. (98 Miss. at 768, 769, 54 So. at 255) (emphasis added.)
Dreyfus, supra, involved the ordinary contractual obligation by which creditors and debtors are created, not child support and alimony payments that are involved here.
This Court has distinguished the ordinary creditor and debtor relationship from child support and alimony judgments for exemption purposes as early as 1932 in the case of Hollis v. Bryan, 166 Miss. 874, 143 So. 687 (1932), interpreting exemptions under a federal act for world war veterans pertaining to child support and alimony, wherein this Court said in part:
However, we think the court was in error in holding that the money due the wife under a decree as alimony was a debt and that the appellant was a creditor, within the meaning of the federal statute. In Fanchier v. Gammill, 155 Miss. 316, 124 So. 365, we held that the obligation of a husband to support his wife is not merely a contractual obligation, but is founded, in part, upon public policy; that it is a public duty established by law, and not a debt within the sense of that term, or in the sense of the Constitution prohibiting imprisonment for debt; ... We are of the opinion that the term "creditors" used in the federal act has reference to an ordinary contractual obligation by which creditors and debtors are created, and that a wife is not a creditor within the meaning of the statute; and that, therefore, a demand for alimony does not come within the terms of the statute exempting soldiers' compensation from the claims of creditors. (166 Miss. at 880, 143 So. at 688, 689) (emphasis added.)
To the same effect is Stirgus v. Stirgus, 172 Miss. 337, 160 So. 285 (1935), wherein this Court stated:
The obligation of a husband to support his wife is not a debt in the sense of this statute, but is an obligation growing out of the marriage status and public policy, and may be coerced by imprisonment as well as judgment and execution... . (172 Miss. at 341, 160 So. at 286)
A more recent case of this Court distinguishing alimony and child support from the usual creditor/debtor relationship as it applies to exemption statutes is Felder v. Felder's Estate, 195 Miss. 326, 13 So.2d 823 (1943), which states in part:
The claim for alimony is not sued on as a debt to be put in the form of a judgment in the ordinary sense but rather a legal means of enforcing the husband's obligation to his wife and children; a duty in which not only the actual beneficiaries thereof, but the public as well, are interested. It is imposed upon him by virtue of the marriage relation, for reasons of public policy, and not as a debt resulting from some business transaction or other contractual obligation. Nor is it a debt in the sense that the husband may obtain a discharge in bankruptcy for liability on account thereof. In other words, the obligation is deemed by the law to be one of a higher degree than the ordinary contractual obligation into which the exemption laws may be presumed to have been written as a part of the undertaking whereby liability for a simple contract debt is incurred, ... (195 Miss. at 338, 339, 13 So.2d at 828) (emphasis added.)
We therefore hold that Section 85-3-11 is not applicable to this case of child support and alimony.
While it has been said many times by this Court that exemption statutes are to be liberally construed to effectuate their purposes, Dreyfus, supra, United States Fid. & Guar. Co. v. Holt, 148 Miss. 885, 114 So. 818 (1927), even this liberal interpretation must yield when the subject of the garnishment is for child support and alimony which have been specifically excluded from the general exemption statute, the only statute that could apply in this case, which is Section 85-3-1 and provides in part:
The following property shall be exempt from seizure under execution or attachment, to-wit:
(k) All property, real, personal and mixed, for the collection or enforcement of any order or judgment, in whole or in *707 part, issued by any court for civil or criminal contempt of said court; expressly excepted herefrom are such orders or judgments for the payment of alimony, separate maintenance and child support actions. (emphasis added).
The exclusion of alimony, separate maintenance and child support from the exemption statute was apparently brought about by this Court's decisions in Hollis, Stirgus and Felder, supra, distinguishing alimony and child support from the usual and ordinary creditor and debtor relationship.
Perhaps it can be said that the public policy for alimony is not as strong now in the light of E.R.A., working wives and career women, as it was in 1932, 1935 and 1943 when the Hollis, Stirgus, and Felder, supra, decisions were written, but we hasten to point out that the amended general exemption statute, Section 85-3-1, supra, was effective from and after passage June 15, 1966. Furthermore, public policy with reference to child support has not diminished.
This Court holds that the learned chancellor erred in holding appellee was exempt under Section 85-3-11, supra, and sustaining appellee's motion to quash garnishment. The order sustaining the motion to quash is reversed and judgment is rendered here against the garnishee defendant in the sums of $3,509.45 on Policy No. 853594, $3,737.60 on Policy No. 878333 and $3,230.23 on Policy No. 1164454. All costs are assessed to appellee George Mitchell Bonds.
REVERSED AND JUDGMENT HERE FOR APPELLANT.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and WALKER, BROOM, ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.